## WILLIAM M. BRUMMETT *vs.* NEMO HEATER COMPANY.

Suffolk.    November 23, 1900. — January 4, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

B., the proprietor of a device for heating suites in apartment houses by pipes con-
nected with a tubular grate attached to the range in the kitchen of each suite,
offered to heat the apartment house of A. in this manner, A. to supply the ranges,
large enough to furnish the required amount of grate surface, and with suitable
smoke pipes and dampers, " You also to provide flues of sufficient draft." The
ranges, grates and pipes were selected and furnished by B. and paid for by A.
In an action by A. against B. for breach of warranty, it was *held,* that the words
"flues of sufficient draft" meant flues of draft sufficient for the ranges used in
the ordinary way, and not of a greater draft which was required for the operation
of the heater furnished and warranted by B.

Whether the retention and use of a heating apparatus after discovery of its insuffi-
ciency is unreasonable, so as to constitute a waiver of a warranty of its suffi-
ciency, is a question of fact to be left to the jury.

In an action to recover damages for breach of an agreement to furnish an effective
system of heating in a certain house of the plaintiff, the defendant cannot be
allowed to show that his system has worked well in other houses.

CONTRACT to recover damages for breach of an agreement to
furnish a system of heating in the plaintiff's apartment house,
No. 176 Washington Street, Dorchester, which should be capa-
ble of heating two suites on the first and second floors con-
taining seven rooms each.    Writ dated December 22, 1898.
The declaration contained two counts; the first alleging gen-
erally a breach of contract, and the second alleging a breach
of warranty.

At the trial in the Superior Court, before *Aiken,* J., it ap-
peared that the defendant made a written offer to the plaintiff
dated June 27, 1898, and beginning as follows: "We respect-
fully submit the following proposal for heating by hot water
circulation the two suites in apartment house at 176 Washing-
ton Street, Dorchester, Mass., with a Nemo Heater Grate put
into a No.    range in each kitchen.    Said ranges to be sup-
plied by you, to be already in place and to be large enough to
furnish the required amount of grate surface.    You to provide
suitable smoke pipes of ample size, and to be fitted with close-
fitting dampers.    You also to provide flues of sufficient draft."

Then followed various specifications and the following para-graph : " *Guarantee.* — When the apparatus herein proposed to be furnished is completed in accordance with the conditions herein, we guarantee that it shall be capable of warming all rooms mentioned in the schedule, provided our instructions for the management of the apparatus are followed, and that coal suitable to the requirements of the heater is used. If, after the apparatus shall have been accepted by you, any part thereof constructed by us under this proposal shall fail to fulfil the guarantee herein contained, by reason of any defect in the same, we agree to remedy such defect at our own cost, within a reason-able time after receiving written notice of such defect."

The plaintiff accepted this offer by a letter, dated July 12, 1898, as follows : "I hereby accept your proposal and bid dated June 27, 1898, for supplying Nemo Heating Apparatus in the two suites in the apartment house at 176 Washington Street, Mt. Bowdoin Station, Mass. I hereby agree to pay to you or your order the sum of three hundred sixteen and 24/100 dollars (316.24) upon the completion of said systems. Payments to be made as follows : One half to be paid when the returns are in and the balance of the fittings, piping, radiation, etc., are on the ground and the men there ready to complete the job. The balance to be paid within 30 days after the completion and ac-ceptance of the job."

The system thus proposed to be furnished to the plaintiff was a hot water system consisting of radiators and supply pipes lead-ing thereto, through which the hot water passed, the supply pipes being connected with the kitchen range in each apart-ment. The system was new in its design, and was intended for use in small suites. It was first put upon the market about one year previous to the date of the contract.

The house in question was in process of erection when the contract was made, and was built in accordance with the dimen-sions and plans and information respecting the construction furnished the defendant by the plaintiff. The ranges to be supplied by the plaintiff, with the tubular grate and the smoke pipes attached, were selected and furnished by the defendant and paid for by the plaintiff, and were of the size and pattern recommended by the defendant. The plaintiff also supplied

and had in place all hot water boilers and plumbing connections to the ranges. The defendant installed its heating system in the plaintiff's building.

The plaintiff introduced testimony of the tenants that the fires in the ranges were managed properly and burned well, and of experts, who made tests for that purpose, as well as the tenants, that there was no lack of sufficient draft ; that after the heating system was in operation for about two months it did not give satisfaction ; that in cold weather it failed to heat the apartments, and in the spring of 1899 the plaintiff discontinued the use of the system.

The defendant introduced evidence tending to show that the draft was insufficient to secure perfect combustion, and that this was shown by a test made by an expert who was introduced by the defendant at the trial, and that the flame from the burning coal in the range was not of a peculiar color as the defendant contended it ought to be, and did not fill the aperture beneath the grate in such volume as was the case when perfect combustion was secured, and that the failure to heat the apartments was due to such lack of sufficient draft.

There was also evidence that the plaintiff made his first payment under the contract some time in September, 1898, and before the same was actually due ; that the work was ordered to be " charged " as completed on the fourth day of October following, and that on the fourth day of November he made a second payment, leaving a balance due of $100 on account of the contract. No written notice of completion of the work was ever given to the plaintiff, and the remainder of the contract price, namely, $100, was never paid.

The defendant offered evidence tending to show that at the time of the second payment, and before that time, the plaintiff had not rejected the work nor complained that it was insufficient.

The defendant offered testimony that, at the time when this contract was made, its system had been installed in from forty to fifty different places, and to a greater or less extent since the date of the contract, and had worked well. This evidence was excluded against the objection of the defendant, and the defendant excepted.

At the conclusion of the evidence, the defendant among other requests asked the judge to rule, that the fact that the plaintiff retained the system of heating and used it for several months was a waiver of the warranty and a bar to any recovery in this action; and also to rule, that the provision in the contract " You also to provide flues of sufficient draft" should be construed as meaning flues of sufficient draft for such a range used as a heater; that is, of sufficient draft to secure complete combustion in the range when using the down draft required for the defendant's system of heating.

The judge refused to give the instructions requested, and in his charge to the jury, after speaking of the obligation of the plaintiff to furnish the ranges required by the contract with proper smoke pipes and dampers, gave the following instruction : " The principal, and very likely I am justified in saying, the only substantial question is whether the next requirement on the part of Mr. Brummett to be done was by him done ; that is, to provide flues of sufficient draft.   Now, I instruct you, gentlemen of the jury, that the meaning of that clause in the contract was that Mr. Brummett should furnish flues of sufficient draft for the range or the ranges, there being two, that the contract stipulated for; he should furnish flues of sufficient draft for the ranges contemplated by the contract.   If he did that, if he furnished flues of sufficient draft for the ranges that were put in there by agreement of the parties, he performed his part of the contract in that respect.   So the question before you on this feature of the case for you to determine is whether the flues in those chimneys were sufficient to operate the ranges that were put in by agreement of the parties."

Upon the questions of acceptance and waiver, the judge, at the request of the defendant, gave the following instruction : " I instruct you, gentlemen, that you should consider whether the plaintiff unreasonably detained and used these systems after he discovered their inefficiency, and if such detention and use was unreasonable, then the plaintiff cannot recover in this action."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*M. F. Dickinson, Jr. & W. B. Farr,* for the defendant.
*J. J. McCarthy,* for the plaintiff.

KNOWLTON, J. · An important question in this case is whether the words, " flues of sufficient draft," mean flues of draft sufficient for such ranges as the contract called for, when used in the ordinary way, or of draft greater than is ordinarily used with such ranges, and sufficient to produce complete combustion of the fuel when burned in an unusual way in connection with the heater furnished by the defendant. It appears that the house " was built in accordance with the dimensions and plans and information respecting the construction furnished the defendant by the plaintiff." We assume that this means furnished the defendant before the contract was made. The ranges, " supplied by the plaintiff, with the tubular grate and the smoke pipes attached, were selected and furnished by the defendant and paid for by the plaintiff, and were of the size and pattern recommended by the defendant." The words "sufficient draft" must be interpreted in connection with the circumstances under which they were used. They must have been assumed by the parties to mean sufficient for these ranges, used in the ordinary way, in the absence of anything to show that the ranges would require a greater draft with this heater than is commonly used with such ranges. There was no intimation in the contract that a greater draft than is usual for such ranges would be required, and the plaintiff could not be supposed to know the fact, if it was a fact. On the other hand the defendant was supposed to know from the plans of the house what the size and length of the flues were to be. We are of opinion that the ruling on this part of the case was correct.

The judge could not properly rule as matter of law that the plaintiff had waived the warranty contained in the contract. The evidence bearing upon this point was submitted to the jury with correct instructions.

The testimony that the system had worked well in other houses was rightly excluded. This evidence was remote from the issue, which was, whether the heater as constructed in this house, was capable of warming the rooms mentioned in the schedule contained in the contract. The introduction of such evidence would have raised many collateral issues that could not properly be tried in this action.

*Exceptions overruled.*