FRANCIS W. ADAMS *vs.* EVANS R. DICK & others.

Suffolk. October 17, 1916. — January 6, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Wagering Contracts. Evidence*, Presumptions and burden of proof, Materiality, Remoteness. *Practice, Civil*, Finding of judge, Proof of foreign law. *New York. Words*, "Short sale," "Valid contract therefor."

In an action under R. L. c. 99, §§ 4, 6, against a stockbroker to recover money paid as margins on alleged wagering contracts, there was evidence that numerous "short sales" were ordered by the plaintiff and were made by the defendant

and there was evidence on which it might have been found that a "short sale" was a sale of stock which the seller did not own. *Held,* that under § 6 mentioned above this was "*prima facie* evidence that . . . there was an intention that there should be no actual purchase or sale, and that there was reasonable cause to believe that said intention existed."

In the same case it was *held* that the fact that the evidence mentioned above in regard to short sales was introduced wholly by the defendant in no way deprived the plaintiff of the right to rely on it.

In the same case it was *held* that a general finding of the judge for the plaintiff imported a finding of all the subsidiary facts essential to that conclusion, and necessarily included a finding that the plaintiff intended that there should be no actual purchases or sales on his orders.

In the same case it was *held,* that a finding, that the plaintiff had no intention as to whether the defendant actually should receive from or deliver to any one certificates of stock ordered by him to be bought or sold, was not inconsistent with a finding that the plaintiff intended that there should be no actual purchases or sales on his orders.

In the same case it was *held* that a finding that the plaintiff intended that all dealings upon his orders should be carried on by the defendant "upon the New York stock exchange . . . in accordance with its rules" was not incompatible with a general finding for the plaintiff; because there might be wagering even though the rules of the stock exchange were observed strictly.

In the same case it was *held* that the general finding for the plaintiff also necessarily imported a finding, that the defendant had not shown that actual purchases or sales were made by the defendant upon all the orders of the plaintiff and a finding of all the subsidiary facts essential to that conclusion.

In the same case it was *held,* that on the evidence presented the defendant had failed to show actual purchases and sales as defined in *Fiske* v. *Doucette,* 206 Mass. 275.

Discussion by RUGG, C. J., of the course of business of the stock exchange and of the clearing house, as shown in the present case, in regard to its relating to sales of securities and not to contracts for future deliveries within the meaning of R. L. c. 99, § 4.

In the provision of R. L. c. 99, § 4, that there shall be no right of action under that section if the person employed to make a purchase or sale of securities "makes . . . an actual purchase or sale of said securities . . ., or a valid contract therefor," the words "or a valid contract therefor" refer to contracts for future deliveries and not to those for present sales.

In the case above described it appeared that in none of the many short sales made by the defendant upon the order of the plaintiff did the plaintiff deliver or intend to deliver any certificate or certificates of stock and that the defendant knew this to be so and never demanded any certificate or certificates, and it was *held* that the trial judge was not required to find that there were valid contracts for sale within the meaning of the statute.

In the same case it was *held* that the judge was not bound to find, upon the evidence of the law of the State of New York presented at the trial, that the transactions of the defendant with the plaintiff were actual purchases or sales or valid contracts therefor under the law of New York.

In the same case it was *held* that the law of New York was a fact upon which the finding of the trial judge was final if there was any evidence to warrant it.

In the same case witnesses for the defendant, who had been permitted to testify

that there was no instance of a transaction between the plaintiff and the defendant when the defendant did not have an actual transaction with some other broker, that none of the transactions of the defendant on the stock exchange was fictitious and that the business done by the defendant with the plaintiff was executed in the same manner as was all business done on margins, were not allowed to testify that the defendant never had carried on fictitious transactions in the purchase or sale of stocks. *Held,* that the ruling as to the testimony admitted was sufficiently favorable to the defendant, and that the testimony excluded was excluded properly in accordance with the general rule that evidence as to what has been done with other persons and on different occasions is not material in trying to ascertain the truth respecting a particular transaction. In the case above described the judge refused to find and to rule that the defendant had repaid a certain amount of money to the plaintiff with which he should be credited, and it was *held,* that, if the repayments were on account of unlawful transactions, the defendant was not entitled under the statute to be credited with them, and that the facts disclosed by the record were not sufficient to require a ruling that as matter of law the repayments should be credited to the defendant.

CONTRACT under R. L. c. 99, §§ 4, 6, against the members of a firm of stockbrokers to recover money paid as margins on alleged wagering contracts. Writ dated November 17, 1910.

In the Superior Court the case was tried before *Jenney,* J., without a jury. The plaintiff put in evidence the report of an auditor, who had found for the plaintiff in the sum of $23,031.50. The defendants put in evidence the testimony given before the auditor of one Shaw, the manager of the New York office of the defendants, of one Hunt, the managing partner of the defendants, and of one Graham, a member of the New York bar who testified as to the law of the State of New York. This testimony was put in under an agreement between the parties that it should be treated as if the witnesses personally had given the same testimony before the judge.

The evidence is described in the opinion. At the close of the evidence the defendants made eleven requests for findings and rulings. Of these the judge made the first, fourth, fifth and sixth, which are stated later. The others were as follows:

"2. The only evidence offered before me, in addition to the auditor's report put in by the plaintiff, being evidence offered by the defendants in support of their affirmative defence, I rule that the findings in the auditor's report respecting the plaintiff's intention and lack of intention are not such as to enable the plaintiff to recover under § 4 of the statute.

"3. I find and rule on all the evidence that the plaintiff is not entitled to recover."

"7. I find that the defendants made, in accordance with the terms of the plaintiff's employment and for his account, actual purchases or sales of the securities in question and contracts therefor, all of which were valid under the law of New York.

"8. I find that the defendants made, in accordance with the terms of the plaintiff's employment and for his account, actual purchases or sales of the securities in question, all of which were valid under the law of Massachusetts.

"9. I find that the defendants made, in accordance with the terms of the plaintiff's employment and for his account, contracts for the purchase or sale of the securities in question, all of which contracts were valid under the law of Massachusetts.

"10. All the foregoing findings of fact are made irrespective of any evidence of the witnesses Shaw or Hunt which was admitted against the plaintiff's objections.

"11. I find that the plaintiff paid to the defendants from time to time on account of the transactions in question sums amounting in the aggregate to $23,031.50; that the defendants have repaid to the plaintiff from time to time on that account sums aggregating $17,486.38; and that the payment of the balance, $5,545.12 with proper interest, would put the plaintiff in the position which he would have been in if the transactions had never occurred; and I rule that if the plaintiff can maintain this action he can recover only $5,545.12, with proper interest."

The judge refused to make any of the findings or rulings quoted above.

The judge made the following findings or rulings, which were requested by the defendants:

"1. The plaintiff dealt with the defendants in all the alleged transactions as brokers employed by him to buy and sell for his account, and the plaintiff's case stands under the second clause of R. L. c. 99, § 4."

"4. The provisions of § 6 of the statute respecting *prima facie* evidence of intention are presumed to have been given due weight by the auditor in reaching his finding that the plaintiff had no intention, especially as these presumptions were expressly urged by the plaintiff's counsel in his argument before the auditor.

"5. The provisions of § 6 of the statute respecting *prima facie* evidence have no application to the issue raised by the affirmative defence set up by the defendants in their pleadings.

"6. It appearing that all the actual transactions of the defendants in carrying out the plaintiff's orders were had, and were. intended by the plaintiff and defendants to be had, wholly in the State of New York, the plaintiff cannot recover if the defendants made, for the plaintiff's account and in accordance with the terms of their employment, [actual] purchases and sales of the securities which were valid under the New York law, or contracts for such purchases and sales valid under that law." In making the foregoing ruling the judge inserted the word "actual" which is enclosed in brackets.

The judge found for the plaintiff in the sum of $23,031.50 with interest from November 17, 1910, the date of the writ. The judge reported the case upon the pleadings, the auditor's report, the other evidence above referred to and the judge's findings and rulings for determination by this court.

R. L. c. 99, §§ 4, 6, are as follows:

"Section 4. Whoever upon credit or upon margin contracts to buy or sell, or employs another to buy or sell for his account, any securities or commodities, intending at the time that there shall be no actual purchase or sale, may sue for and recover in an action of contract from the other party to the contract, or from the person so employed, any payment made, or the value of anything delivered, on account thereof, if such other party to the contract or person so employed had reasonable cause to believe that said intention existed; but no person shall have a right of action under the provisions of this section if, for his account, such other party to the contract or the person so employed makes, in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or commodities, or a valid contract therefor."

"Section 6. In a proceeding under the provisions of the two preceding sections, the fact that the seller or the person employing another to sell for his account did not own the securities or commodities at the time of the contract of sale or at the time of the giving of the order to sell, and the fact that settlements were made without the completion of the purchase or sale of the securities

and commodities bought or sold or ordered to be bought or sold, shall each be *prima facie* evidence that within the meaning of section four there was an intention that there should be no actual purchase or sale, and that there was reasonable cause to believe that said intention existed; and the parties liable to an action under the provisions of said section shall be jointly and severally liable."

*R. G. Dodge,* (*E. B. Chapin* with him,) for the defendants.

*W. R. Bigelow,* for the plaintiff.

RUGG, C. J. This is an action brought under R. L. c. 99, §§ 4, 6, to recover moneys paid to the defendants, who are stockbrokers, on account of stock transactions had with them by the plaintiff. That statute permits one, who, upon credit or upon margin, employs another to buy or sell securities for his account, "intending at the time that there shall be no actual purchase or sale," to sue for and recover payments made on account of such transactions, if such other person "had reasonable cause to believe that said intention existed;" but that there shall be no right of action if such other person makes "an actual purchase or sale of said securities . . . or a valid contract therefor."

The case was sent to an auditor, whose finding was for the plaintiff. It then was tried upon the auditor's report and some oral evidence from witnesses called by the defendants before a judge of the Superior Court, who also found for the plaintiff and reported the case for the consideration of this court.

The general finding for the plaintiff was amply warranted. There was abundant evidence of numerous short sales ordered by the plaintiff and carried out by the defendants. A short sale was defined by one of the defendants as "a sale of stock where the certificate is not received from the customer. . . . A short sale is selling stock which a man does not own . . . I won't say that it is covered by that. . . . I should say that a short sale is recognized by brokers as a sale of a stock where there has been no certificate received from the party that the broker is selling it for." It well might have been found that a short sale was a sale of stock which the seller did not own. It is provided by § 6 that in a proceeding to recover money under § 4, "the fact that the seller or the person employing another to sell for his account did not own the securities . . . at the time of the contract of sale or at the time of the

giving of the order to sell . . . shall . . . be *prima facie* evidence that
. . . there was an intention that there should be no actual purchase
or sale, and that there was reasonable cause to believe that said
intention existed." The evidence of short sales at the trial before
the judge came from the evidence offered by the defendants. But
the plaintiff was entitled to whatever advantage he could find in it.
A *prima facie* case was made out in his favor by evidence of short
sales quite apart from the auditor's report. Hence the defendants'
second request for instructions did not state the facts truly and
was refused rightly.

The general finding for the plaintiff imports a finding of all
the subsidiary facts essential to that conclusion. It necessarily
includes a finding that the plaintiff intended that there should
be no actual purchases or sales on his orders. This is not incon-
sistent with the express finding that the plaintiff had no intention
as to the point whether the defendants, in carrying out his orders
to buy or sell, should actually receive from or deliver to any one
else certificates of stock ordered by him to be bought or sold. This
is not a finding that there was a negative lack of intention by the
plaintiff upon the vital point that there should be "no actual
purchase or sale" on his orders. It relates to the different subject
of delivery and receipt of certificates. His mind might be a blank
upon that matter and still the positive intention that there should
be no actual purchases or sales on his orders arise from the *prima
facie* case to that effect made out by the short sales and from all
the other circumstances in the case tending to that conclusion. It
was expressly found that the plaintiff "intended not to receive
nor to deliver himself any of the stocks ordered by him to be
bought or sold by the defendants, and the defendants knew he so
intended," although this is not conclusive. *Wilson* v. *Head,* 184
Mass. 515, and like cases, have no bearing upon this aspect of the
case at bar.

The finding that the plaintiff "intended that all dealings upon his
orders should be carried on by the defendants upon the New York
stock exchange . . . in accordance with its rules" is not incom-
patible with a general finding for the plaintiff. There may be
wagering even though the rules of the stock exchange are strictly
observed. *Higgins* v. *McCrea,* 116 U. S. 671. *Fiske* v. *Doucette,*
206 Mass. 275.

The plaintiff made out a *prima facie* case by showing short sales of stocks. The burden then rested on the defendants to prove actual purchases and sales or valid contracts therefor in defence, in order to escape from the liability established by the statute. *Greene* v. *Corey*, 210 Mass. 536, 546.

The finding in this respect also is against the defendants, and imports a finding of all the subsidiary facts essential to that conclusion. As the burden of proof rested on the defendants, they can prevail only by showing that certain specific facts found by the judge are incompatible as matter of law with his decision. *Fisher* v. *Doe*, 204 Mass. 34.

It was decided in *Fiske* v. *Doucette*, 206 Mass. 275, 283, 284, that the stockbroker can establish this affirmative defence as to actual purchases and sales only when he has made purchases and sales honestly "in pursuance of a true intent to consummate a veritable change of title to definite property. Actual purchase or sale means in this connection a real and tangible transfer of a full and complete title to an existing, defined and certain security or commodity. . . . The defence . . . is not made out unless by reason of the purchase on the stock exchange the broker or his agent has within his immediate control certificates of stock at all times ready to deliver to the plaintiff upon demand, or in case of sales like certificates for delivery to a purchaser."

The judge found that the defendants had only five sources from which to comply with possible demands upon them for the delivery of stocks sold on the plaintiff's orders or for delivery to the plaintiff of stocks bought on his orders, viz.: stocks actually in the hands of the defendants, stocks pledged by the defendants as collateral for loans made to them from banks, stocks pledged by the defendants to other brokers, stocks lent by the defendants to other brokers, and the obligations of persons who had sold stock short through the defendants without furnishing them with the certificates; and that, unless all these sources complied with the law, the defendants were not ready to respond to such demands. Manifestly stock in actual possession was available to the defendants. The plaintiff concedes that stocks pledged to the banks also were available. See *Chase* v. *Boston*, 180 Mass. 458. Without discussing whether stocks pledged or lent to other brokers were available to the defendants, it is plain that the obligations of persons who had

sold stock short, to deliver certificates of such stock on demand, utterly fails to constitute stock in possession. As shown by the transactions with the plaintiff, short sales at most result in contracts which neither party expects to carry out by actual delivery. But even if there is a purpose to carry them out by an actual delivery of the certificates of stock, a contract for the delivery of stock is not equivalent, in any just sense, to possession of stock. The defendant failed to show actual purchases and sales as defined in *Fiske* v. *Doucette*, 206 Mass. 275.

The judge was not required to find that valid contracts for the purchase or sale of all the stocks in question were made by the defendants. The course of business of the defendants with the plaintiff was found to be that the plaintiff gave his orders to buy or sell stocks at the defendants' Boston office. These orders were telegraphed to the New York office of the defendants, who telephoned them to their representative on the floor of the New York stock exchange. That representative then dealt with some other broker in a form purporting to represent a purchase or sale of the stock, and reported his action to the defendants' New York office, where the transaction was entered on their books. Each purchase and sale made for any one on the floor of the exchange by the defendants, including transactions with the plaintiff, was entered on tickets, each signed by the defendants, and showing the stock, price and other broker involved, and delivery date, which date always was the day following, or the following Monday when the transaction on the floor of the exchange was on Friday or Saturday. Each of these tickets, after the close of the stock exchange every day, was sent to the other broker and exchanged for corresponding tickets, *mutatis mutandis*, signed by that broker. The defendants also made out a clearing house sheet, so called, showing all such transactions for the day and balance tickets showing the balance of their so called sales and purchases of each stock for the day, which they forwarded to the clearing house. On the following day, the defendants received from the clearing house the balance tickets, to which had been added the name of some broker purporting to be the one to receive or deliver the balance shown of the particular stock, with a check payable to or a draft on the defendants from the clearing house for the balance due to or from the defendants on the day's transactions. Settlements with these

brokers whose names thus were added would be made on the following day in the ordinary course. In no instance here material did the plaintiff ever deliver to the defendants any certificates for the stock ordered by him to be sold, nor did the defendants receive for his account any certificates ordered by him to be bought, nor set apart for delivery to him any certificates to correspond with his orders to buy, nor deliver or set apart for delivery certificates of stock to other brokers in accordance with his orders to sell, except as is above described.

This is an amplified statement of what we understand to have been the course of business described in *Fiske* v. *Doucette,* 206 Mass. 275. The contention was not seriously made in that case that this course of business constituted the making of valid contracts for the sale and purchase of stocks as distinguished from actual purchases and sales. That contention is here made by the defendants.

It seems manifest that the course of business on the stock exchange means, and is treated as meaning, present sales. That is the language of the transactions as between the customer and broker. It was the language here employed between the plaintiff and the defendants. The plaintiff's orders were to buy and to sell stocks, not to make contracts for the delivery of stock in the future. The stock exchange clearing house, and all the steps above described as taking place between the orders of the plaintiff and the conclusion of the transactions, constitute merely machinery of convenience for expediting that which the statute as applied to stocks described as "an actual purchase or sale" of stock.

The course of business of the stock exchange shown in this case is in every essential a present sale of stocks and not a contract for a future delivery within the meaning of the statute. The delay in the physical transfer of the possession for a day is for mutual accommodation growing out of the nature of the property to be delivered and the possible necessity for the issuance of new certificates in order to complete the sale. But it is none the less a present sale because of this delay in the delivery. The dealings are all on the footing of present deliveries. The clearing house is and purports to be used to effect present deliveries between parties who have stocks in hand rather than to set off and cancel contracts to be performed in the future between parties who do not have stocks in hand. Stocks commonly are bought and sold

for present deliveries. The words "a valid contract therefor" in the clause of R. L. c. 99, § 4, which provides that there shall be no recovery where the broker or other party makes "an actual purchase or sale of said securities or commodities, or a valid contract therefor," refer to contracts for future deliveries and not for present sales such as were conducted on the stock exchange in the case at bar. The statute applies, also, to commodities, which includes provisions and grain, which are dealt in by contracts for future delivery, and which afford ample scope for the operation of the statute on contracts for future deliveries.

The judge found that in instances of short sales the customer, where the transactions were intended as *bona fide* sales of stock, was obliged on demand to deliver to the broker certificates of stock corresponding to those sold. But in none of the many instances of short sales did the plaintiff deliver or intend to deliver any certificates, and the defendants knew this to be so and never demanded certificates. The judge was not required to find that there were valid contracts for sale within the meaning of the statute. The facts here disclosed are quite different from those in *Brown* v. *Rushton*, 223 Mass. 80.

The judge was not bound to find that the transactions of the defendants with the plaintiff were actual purchases, or sales, or valid contracts therefor under the law of New York. The law of New York was a fact upon which the findings of the judge are final if there is any evidence to support them. *Electric Welding Co. Ltd.* v. *Prince*, 200 Mass. 386, 390. The refusal of the judge to make the finding requested well might have been based on the decisions in *Weld* v. *Postal Telegraph Cable Co.* 199 N. Y. 88, 101–103, *Hurd* v. *Taylor*, 181 N. Y. 231, 233, *Caswell* v. *Putnam*, 120 N. Y. 153, *Taussig* v. *Hart*, 58 N. Y. 425, 430 (all of which were in evidence), as applied to the facts here disclosed.

No error is shown in the exclusion of the testimony of Shaw, the manager of the defendants' New York office, and of Hunt, their managing partner, that the defendants had never carried on fictitious transactions in the purchase or sale of stocks. They were permitted to testify that there was no instance of a transaction between the plaintiff and the defendants when the latter did not have an actual transaction with some other broker, that none of the transactions on the stock exchange by the defendants was fic-

titious, and that the business done with the plaintiff was executed in the same manner as was all business done on margins. That was sufficiently favorable to the defendants. The issue between the parties related to the character of the business done by the plaintiff with the defendants. It is only as bearing upon this point, and apparently in the absence of more specific testimony, that evidence of broader range when received has not been held to have been wrongly admitted in *Allwright* v. *Skillings,* 188 Mass. 538, and *Chandler* v. *Prince,* 214 Mass. 180, 182. The general rule is that evidence of that which parties have done with other people and on different occasions is not material in trying to ascertain the truth respecting a particular transaction. *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117, 122. *Brummett* v. *Nemo Heater Co.* 177 Mass. 480, 484. *Brigham* v. *Morgan,* 185 Mass. 27, 39.

The eleventh request was denied. The request involved a finding of fact as well as a ruling of law. The finding of fact was not made. This cannot be said to have been erroneous in law. If the repayments were not in fact on account of the principal sums paid in, but on account of the unlawful transactions, then the defendants were not entitled under the statute to be credited with them. Sufficient facts are not found which required the ruling as matter of law that the payments made should be credited to the defendants. This aspect of the case is covered by *Lyons* v. *Coe,* 177 Mass. 382, 384, *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117, 122, 123, *Picard* v. *Beers,* 195 Mass. 419, 429, *Beers* v. *Wardwell,* 198 Mass. 236.

No reversible error is disclosed either in the rulings made or those denied. In accordance with the terms of the report, the entry may be judgment for the plaintiff for $23,031.50 with interest from November 17, 1910.

*So ordered.*