CITY INSTITUTION FOR SAVINGS *vs.* CAROM KELIL.

Middlesex.   November 10, 1927. — January 14, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage,* Of real estate: .deficiency after foreclosure.   *Contract,* Novation.
  *Surety.   Subrogation.   Corporation,* Officers and agents.   *Evidence,*
  Competency.   *Practice, Civil,* Findings by judge.

Where, at the hearing of an action of contract by a savings bank against
a mortgagor named in a mortgage of real estate to the bank, to recover
a balance remaining due upon the mortgage note after a foreclosure sale,
the defendant contends that circumstances attending a sale of the
property by the mortgagor to one who assumed and agreed to pay the
mortgage note, together with conduct of bank officials toward such
grantee, changed the relation of the mortgagor to the plaintiff mort-
gagee as to liability on the mortgage note, it was proper to admit in
evidence testimony by an assistant treasurer of the plaintiff showing
the plaintiff's course of business, where mortgagors sold the property
subject to the mortgage, in explanation of acceptance of interest from
the mortgagor's grantee and crediting of it on the mortgage note.
The rights and relation of the plaintiff mortgagee and the defendant
mortgagor, above described, were not changed, even if the plaintiff
had notice of the assumption of the mortgage by the defendant's
grantee, unless the plaintiff thereafter extended the time of payment
without the defendant's consent or made an agreement with the grantee,
resting on a valuable consideration, to substitute him for the defendant
as principal debtor; in the action above described there was no evidence
warranting a finding of such an extension or agreement.
Acts of the treasurer and assistant treasurer of the plaintiff, even if they
had warranted the finding of such an agreement with the defendant's
grantee as above described, were not binding on the plaintiff, since the
record disclosed no evidence that either of them had power to change
the liability of the defendant so that he became surety only.
Evidence showing that, as a part of the transaction when the defendant
purchased the property and gave the mortgage to the plaintiff, he
received from his grantor a bond conditioned to save the defendant
harmless from all losses, liabilities and counsel fees which "he may
suffer by reason of an inheritance tax, or by reason of State or Federal
taxes due or assessed against the mortgaged property"; that the obligor
indorsed the bond "Payable to . . . [the plaintiff] mortgagee"; that
the bond was in the possession of the plaintiff at the time of the convey-
ance by the defendant to his grantee and bore an indorsement by the
defendant that, having sold and conveyed the property to his grantee,
he transferred the bond to his grantee subject to the rights of the plain-
tiff, had no bearing as showing corporate action by the plaintiff releasing
the defendant from his original contract.

Where there was no binding agreement by the plaintiff for delay, inaction or forbearance to enforce the mortgage by foreclosure, the mere facts that the defendant notified the plaintiff in June, November and December that the property was depreciating, and asked it to foreclose, but the plaintiff did not enter to foreclose until January, when it began collecting rents, and did not hold a foreclosure sale until April, did not discharge the defendant, even if he had become merely a surety, although the property, which, before such notices, was of sufficient value to satisfy the mortgage on a sale, thereafter depreciated so that at the sale a deficiency resulted.

At the hearing by a judge without a jury of the action above described, there was a general finding for the plaintiff which included sums paid by the plaintiff for taxes and interest thereon, for water assessments, for plumbing, for insurance premiums, for a commission of the auctioneer, and for the services of counsel and legal services in the foreclosure proceedings. It appeared that the plaintiff had been in possession of the property by entry before the foreclosure sale. *Held,* that in view of the finding by the judge, the allowance of the sums could not be held to have been improper under G. L. c. 183, § 27; c. 244, § 20.

CONTRACT to recover a balance or deficiency of $3,618.15 and interest alleged to be due after a foreclosure sale under a mortgage securing a promissory note given by the defendant to the plaintiff. Writ dated May 20, 1926.

In the Superior Court, the action was heard by *Brown,* J., without a jury. Material evidence is stated in the opinion. At the close of the evidence, the defendant asked, among others, for the following rulings:

"2. On the pleadings and the evidence the defendant cannot be charged in this action with $845.71, taxes and interest for 1925, paid by the plaintiff.

"3. On the pleadings and the evidence the defendant cannot be charged in this action with $76.44, paid to the city of Lowell for water assessments.

"4. On the pleadings and the evidence the defendant cannot be charged with $44.84, insurance premiums paid by the plaintiff.

"5. On the pleadings and the evidence the defendant cannot be charged in this action with $173.95, plumber's bill paid by the plaintiff.

"6. On the pleadings and the evidence in this case the defendant cannot be charged with $210.45, paid by the plaintiff for attorney's services and legal expenses.

"7. On the pleadings and the evidence the defendant cannot be charged in this action with the sum of $198.70, auctioneer's services and advertising, paid by the plaintiff."

"13. On all the evidence the defendant became a surety on the note in suit as between the plaintiff and himself on the sale of the mortgaged property to Gingras, and the latter's agreeing to assume and pay the defendant's mortgage, with the knowledge and assent of the plaintiff."

The judge denied the requests and found for the plaintiff in the sum of $3,780.96. The defendant alleged exceptions.

*J. J. Hogan,* (*W. A. Hogan* with him,) for the defendant.
*J. G. Hill,* for the plaintiff.

BRALEY, J. The defendant, a dealer in real estate, entered into an agreement prior to May 29, 1923, to purchase certain land and buildings for $27,250, and subsequently made application to the plaintiff for a loan of $20,000 to be secured by a mortgage of the property. The loan was granted, and the mortgage and mortgage note dated May 29, 1923, maturing one year thereafter, with interest payable semiannually at the rate of six per cent, were executed and delivered to the plaintiff, which duly recorded the mortgage. The defendant, while the agreement of purchase was pending, made an agreement to sell the premises to one Louis Gingras and on June 1, 1923, gave a deed to him which contained the following clause: "This conveyance is made subject to a mortgage of $20,000 running to the City Institution for Savings and to the taxes for the year 1923, all of which the grantee hereby assumes and agrees to pay." The grantee on the same date and as a part of the transaction gave a mortgage to the defendant for $6,000, which was also made subject to the first mortgage. There was evidence tending to show that the defendant requested the attorney and vice-president of the plaintiff that the plaintiff's mortgage "be made direct from Gingras," but the request was not granted, and Gingras made no application to the plaintiff for a mortgage loan. The defendant testified that, accompanied by Gingras and one Hamel, an attorney, he went to the plaintiff's banking house immediately after the conveyance to Gingras where he talked with the plaintiff's assistant treas-

urer, one Putnam, who under the supervision of the treasurer had charge of notes and mortgages and told him that the property had been sold to Gingras who had agreed to assume and pay the mortgage. Putnam replied, "All right. I'll take the address," and produced a card relating to the mortgage and drew a line through the name of the defendant, and inserted the name of Gingras with his address, and told Gingras that the interest days were June 24 and December 24 in each year and that he would receive notice from time to time of the amount due from the date of making the mortgage, and that payment might be made personally or by check. The card was produced by the plaintiff and put in evidence. The bank in June and December, 1923, sent notices to Gingras of the amount of interest due which Gingras paid by check and these amounts were credited on the back of the note. But, Gingras having abandoned the property, ceased to make further payments and also failed to pay the defendant interest on the second mortgage. The defendant thereupon began proceedings to foreclose the second mortgage for breach of condition, and in September, 1923, entered upon the premises, assumed charge of the property, collected the rents from tenants, and paid the plaintiff interest on its mortgage up to and including June 24, 1925. In this connection the testimony of the assistant treasurer that the plaintiff had many mortgages where the mortgagors sold the equity subject to the mortgage and took policies of insurance showing the change, and in some instances this was done even if no notice of the change in title had been given, was admissible as showing the plaintiff's course of business and in explanation of the change in the card and subsequent acceptance of interest from Gingras. *Barbrick* v. *Huddell*, 245 Mass. 428, 438.

It is contended by the defendant on the foregoing uncontradicted evidence that, by the defendant's conveyance to Gingras coupled with notice to the plaintiff, and the plaintiff's acceptance of interest from Gingras, he became a surety and, the property being then admitted to be worth $35,000 on the plaintiff's own valuation, the plaintiff cannot recover and his motion for a directed verdict should have been

granted. *North End Savings Bank* v. *Snow,* 197 Mass. 339. *Codman* v. *Deland,* 231 Mass. 344.

The rights and relations of the plaintiff and defendant however were not changed, even if the plaintiff had notice of the assumption of the mortgage by Gingras, unless the plaintiff thereafter extended the time of payment without the mortgagor's consent, or by an agreement with Gingras resting on a sufficient consideration to substitute him as the principal. *North End Savings Bank* v. *Snow, supra.* *Codman* v. *Deland, supra.* *Phillips* v. *Vorenberg,* 259 Mass. 46. But such conditions are not shown. Moreover, neither the treasurer nor the assistant treasurer appears to have had any power to change the liability of the defendant so that he became a surety only. *Gilson* v. *Cambridge Savings Bank,* 180 Mass. 444. The evidence showing that the bond which the defendant's grantor gave to the defendant conditioned to save him harmless from all losses, liabilities and counsel fees which "he may suffer by reason of an inheritance tax, or by reason of State or Federal taxes due or assessed against the mortgaged property," and the indorsement signed by the obligor "Payable to the City Institution for Savings . . . mortgagee" which was in the possession of the plaintiff at the time of the conveyance to Gingras, as well as the indorsement of the defendant that, having sold and conveyed the property to Gingras, he transferred the bond to Gingras subject to the rights of the plaintiff, has no bearing as showing corporate action by the plaintiff releasing the defendant from his original contract.

The defendant when he paid the interest due June 24, 1925, told Putnam, that the property was not half rented, and was depreciating, and in November or December the defendant requested the attorney and vice-president of the plaintiff to foreclose the mortgage. But it was not until January 5, 1926, that the plaintiff entered and took possession for the purpose of foreclosure of the property, the record title of which being in Gingras. G. L. c. 244, § 1. The plaintiff collected the rents until April 13, 1926, when, after extensive advertising, it sold the property at auction for $18,500. It was uncontroverted that the fair market value of the prop-

erty in July, 1925, when the defendant made his first request for foreclosure, was $28,000, and that in November and December, 1925, when the second request was made, it was worth $25,000.   The defendant accordingly contends that the failure of the plaintiff to foreclose as requested discharged him from liability for the deficiency resulting from the foreclosure sale.   But the inaction or forbearance of the plaintiff to enforce the mortgage did not discharge the defendant even if he had been a surety, and as principal he was bound to pay the full indebtedness.  *Lewis* v. *Blume*, 226 Mass. 505.  *Dunn* v. *Lerman*, 241 Mass. 555.  *Phillips* v. *Vorenberg, supra.*

While the mortgage deed is not included in the record, the validity of the foreclosure sale is unchallenged, and the last contention of the defendant is that, although he does not question the amount of the sums paid by the plaintiff for taxes, and interest thereon, and for water assessments, and for plumbing, and the premiums for insurance, and the commission of the auctioneer, and for the services of counsel and legal services in the foreclosure proceedings, these charges were improperly allowed by the court, and that he is entitled to be credited with the full amount received at the sale. It is provided by G. L. c. 244, § 20, that if a mortgagee, as in the case at bar, "has had possession of the land, he shall account for rents and profits, and be allowed for all amounts expended in reasonable repairs and improvements, for all lawful taxes and assessments paid and for all other necessary expenses in the care and management of the land.   A balance of such account, if due from him, shall be deducted from the debt due on the mortgage; if due to him, shall be added to the debt, and paid or tendered as such."   The defendant makes no assertion that the mortgage did not contain a power of sale, and by G. L. c. 183, § 27, a mortgagee foreclosing thereunder "shall be entitled to retain all sums then secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him . . . by reason of any default in the performance or observance of the condition of the mortgage . . . rendering the surplus, if any, to the mortgagor, or his heirs . . . unless otherwise stated in the mortgage."   The plaintiff therefore could deduct accrued·

interest, and the expenses of foreclosure, including the auctioneer's commission, and charges for legal services. *Phillips* v. *Vorenberg, supra.* The general finding for the plaintiff also shows that the judge was satisfied that all the disbursements made while the plaintiff was in possession before the sale were reasonably necessary for the preservation of the mortgaged property, which comprised the prevention of a sale for nonpayment of taxes, and the protection of the property from damage or loss by fire. *Boston Supply Co.* v. *Rubin,* 214 Mass. 217. *Adams* v. *Dick,* 226 Mass. 46. *Strong* v. *Blanchard,* 4 Allen, 538, 544. *Hubbard* v. *Shaw,* 12 Allen, 120. *Montague* v. *Boston & Albany Railroad,* 124 Mass. 242, 246. *Donohue* v. *Chase,* 139 Mass. 407, 410.

It follows that the defendant's motion for a directed verdict and all his requests for rulings in so far as not given, were denied rightly.

*Exceptions overruled.*