**BURDAN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 7010.**

Circuit Court of Appeals, Third Circuit.

Aug. 8, 1939.

Harold D. Saylor, of Philadelphia, Pa., and W. Louis Bossle, of Camden, N. J., for petitioners.

James W. Morris, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Asst. Attys. Gen., and Harold Leventhal, of Washington, D. C., for respondent.

Before MARIS, CLARK, and BIDDLE, Circuit Judges.

MARIS, Circuit Judge.

The petitioners, executors of the estate of C. C. Burdan, seek a review of the decision of the Board of Tax Appeals determining a deficiency in the decedent's income tax for the year 1933 in the amount of $10,869.74. They assign as error the ruling of the Board that the taxpayer had not proved that he sustained a deductible loss in 1933 and the refusal of the Board to direct a rehearing to permit the petitioners to present newly discovered evidence. The following is a summary of the facts:

C. C. Burdan, the taxpayer, was a director and vice-president of the United States Dairy Products Corporation, hereinafter referred to as Products Corporation. He was also a director and officer of the Dairy Operators Co., hereinafter referred to as Operators Co. That company was a subsidiary of Products Corporation and was engaged in marketing its stock. The taxpayer and his wife were the owners of 10,000 shares of class A common stock of Products Corporation, 3,200 of which the taxpayer had acquired in 1932 at a cost of $118,400. He loaned the 10,000 shares to Operators Co. to be used by that company for collateral purposes and to be returned in kind when the loans were repaid.

In July 1932 Operators Co. was subjected to what was termed a reorganization but was in reality a dissolution. Under the plan carried out Products Corporation

acquired its assets and, with limitations, assumed its obligations. The liabilities consisted of $850,000 owing bankers and brokers. This indebtedness was reduced by the application of $300,000 in cash loaned to Products Corporation by the taxpayer for that purpose. The assets were unpaid subscriptions by customers and employees of Products Corporation and its subsidiaries to the capital stock and gold notes of Operators Co., which under the plan were converted into subscriptions to the stock of Products Corporation. As the subscriptions were paid the moneys received were to be applied to the repayment of the above mentioned loans. The pledged shares of stock were to be returned to the taxpayer in kind but only if the loans were repaid within three years from the proceeds of the stock subscriptions.

On December 31, 1933, there was still owing approximately $97,000 to bankers and brokers and $300,000 to the taxpayer. Approximately $719,000 of subscriptions remained unpaid. The shares of stock for which the subscribers were obligated to pay $100 had a value of only $10. The balance sheets included in the reports to the stockholders of Products Corporation show it to have been solvent at the end of 1932 and 1933. It operated at a small profit in 1932 and at a net loss of $602,000 in 1933; in that year it paid interest on its notes but no dividends on its common stock, made no provision for the annual sinking fund of $75,000, and defaulted its guarantee obligation for the payment of dividends upon certain stocks of its subsidiaries. Products Corporation Class A common stock was traded in on the exchange in 1933 but the trading was inactive and the value was speculative.

The taxpayer was familiar with the financial difficulties confronting Products Corporation and with the possibility that Products Corporation might take advantage of the proposed reorganization provisions of the Bankruptcy Act if enacted. In 1934 Products Corporation did file a petition for reorganization under Sec. 77B, 11 U.S.C.A. § 207; and in 1935 a plan of reorganization was approved. Under this plan the obligation to return the 10,000 shares was completely wiped out. The taxpayer claimed the right to deduct from his 1933 gross income the cost of 3,200 of these shares. This deduction was disallowed and the Commissioner assessed the deficiency here involved.

The petitioners argue that by the end of 1933 it became certain that the shares which had been pledged as collateral would never be returned to the taxpayer and that his entire investment therein became lost. The right to deduct the alleged loss is based upon section 23(e) of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. § 23(e) which provides:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by individuals. Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return."

Under this section the loss must be actually sustained during the taxable year. A deduction may not be allowed for anticipated losses even though they may appear to be imminent. The deduction is not justified unless the transaction is, in the terminology of article 171 of Treasury Regulations 77, promulgated under the Revenue Act of 1932, "closed" and "completed." Corresponding sections of prior Revenue Acts have received a like construction. Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670 (Revenue Act of 1918, 40 Stat. 1057); Shoenberg v. Commissioner of Internal Revenue, 9 Cir., 77 F.2d 446 certiorari denied, 296 U.S. 586, 56 S.Ct. 101, 80 L.Ed. 414 (Revenue Act of 1928, 45 Stat. 791); Howard v. Commissioner of Internal Revenue, 6 Cir., 56 F.2d 781, certiorari denied 287 U.S. 619, 53 S.Ct. 19, 77 L.Ed. 537 (Revenue Act of 1921, 42 Stat. 227).

The "identifiable event" spoken of by Mr. Justice Stone in United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S. Ct. 598, 600, 71 L.Ed. 1120, is an event

which fixes the present fact of loss "such as the sale of property * * * or * * * its destruction or physical injury." An event which indicates the imminence of a loss but not the present fact of loss does not meet the test enunciated by the cited authorities.

While the evidence in the case at bar may be said to indicate that the loss of the shares in question was imminent in 1933, we think the record amply supports the finding of the Board that the loss was not shown to have been sustained in that year. The burden is upon the taxpayer who claims a deduction disallowed by the Commissioner to prove that the Commissioner erred and to establish the statutory right to the claimed deduction. Langford Inv. Co. v. Commissioner of Internal Revenue, 5 Cir., 77 F.2d 468; Gwathmey v. Commissioner of Internal Revenue, 2 Cir., 76 F.2d 754. The petitioners have legally failed to meet this burden.

Our study of the record convinces us that the Commissioner would have been justified in disallowing the claimed deduction on another ground. A loss to be deductible must be within the terms of the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. Section 23(e) permits a deduction for a loss sustained in the taxable year if it was incurred in trade or business or resulted from a transaction entered into for profit. There was no evidence that the taxpayer was in the business of loaning stock for accommodation or that this particular loan of stock was made for profit. See Seiberling v. Commissioner of Internal Revenue, 6 Cir., 38 F.2d 810; Rumsey v. Commissioner of Internal Revenue, 2 Cir., 82 F.2d 158, certiorari denied 299 U.S. 552, 57 S.Ct. 14, 81 L.Ed. 406. On the contrary the evidence seems conclusive that no profit could have been derived by the taxpayer since the only condition of his loan of the stock was that it be returned to him in kind. We may sustain the decision of the Board upon this ground even though it was not advanced by the Commissioner before the Board or considered by the Board in its opinion. Helvering v. Gowran, 302 U. S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Cleveland Clinic Foundation et al. v. Humphrys et al., 6 Cir., 97 F.2d 849, 855, 121 A.L.R. 163, certiorari denied, 305 U.S. 628, 59 S. Ct. 93, 83 L.Ed. 403.

The petitioners requested leave to present upon rehearing alleged newly discovered evidence consisting of an exten-

sion agreement by the creditor bankers and brokers signed March 1933 permitting $17,000 in lieu of $75,000 monthly payments and testimony that these payments were not met in 1933; a 1933 report to Products Corporation by a committee of which the taxpayer was a member that the unpaid stock subscriptions were uncollectible; and a 1933 report by a firm of accountants employed by Products Corporation setting forth that but $110,000 of the $719,000 unpaid stock subscriptions were collectible together with testimony that only $96,000 were in fact collected. This evidence was all directed to the imminence rather than the final occurrence of a loss. The additional evidence if admitted could not have altered the Board's decision. There was, therefore, no abuse of discretion in refusing the rehearing.

The decision of the Board of Tax Appeals is affirmed.