## HADLEY FALLS TRUST CO. v. UNITED STATES.

### No. 3434.

Circuit Court of Appeals, First Circuit.
March 29, 1940.

---

Howard C. Connor and Ward F. Porter, both of Boston, Mass., for appellant.

Robert N. Anderson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

The petitioner-appellant (hereinafter referred to as the "plaintiff") brought this action to recover refunds of income taxes for the years 1930 and 1931.

### 1930

The refund claimed for this year is $4,402.69. In 1927 plaintiff acquired a second mortgage on real estate subject to a first mortgage of $100,000. The second mortgage secured a note in the amount of $65,000, given by the Western Massachusetts Realty Company. The Board of Directors of that Company, on November 8, 1930, voted to turn the property over to the plaintiff, due to the fact that they were unable to meet their mortgage obligations on it.

Pursuant to Massachusetts Statute (Mass.G.L., c. 244, sec. 1), entry to foreclose the second mortgage for breach of the condition thereof was duly made on the property December 1, 1930. The fair market value as of that date was $123,000. The plaintiff claims a deduction of $42,000, the difference between $165,000 and $123,000. This claim is based on section 23 of the Revenue Act of 1928, 26 U.S.C.

A.Int.Rev.Acts, the pertinent provisions of which are the following:

"Sec. [§] 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

\* \* \*

"(f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. \* \* \*

"(j) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

It is the plaintiff's contention that the entry to foreclose resulted in a realized loss[1] within the statute, especially in view of the remote possibility of a redemption by the mortgagor. We cannot accept this contention as sound.

█ Upon the plaintiff rests the burden of proving not only that it sustained a loss in 1930, but the extent of that loss. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. Moreover, the loss must be evidenced by a closed and completed transaction. Regulation 74, Art. 171; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Jones v. Commissioner, 9 Cir., 103 F.2d 681; Howard v. Commissioner, 6 Cir., 56 F.2d 781; Burdan v. Commissioner, 3 Cir., 106 F.2d 207. See also Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670.

In Burdan v. Commissioner, supra, 106 F.2d at page 209, the court said:

"A deduction may not be allowed for anticipated losses even though they may appear to be imminent."

The plaintiff has failed to establish the amount of its loss, or that it was evidenced by a completed transaction.

█ All that the plaintiff had done in 1930 was to make an entry into possession. Under Massachusetts law, entry by the mortgagee to foreclose results neither in any transfer of title to the mortgagee nor in any reduction of the mortgage indebtedness. The mortgagee's going into possession merely increases the security. Mass. G.L., c. 244, sec. 1; West v. Chamberlin, 8 Pick. 336, 25 Mass. 336, 338; Levin v. Century Indemnity Co., 279 Mass. 256, 259, 181 N.E. 223. In the case of foreclosure by entry, the mortgage debt is automatically discharged at the end of the three-year redemption period to the extent of the value of the property at that time. Morse v. Merritt, 110 Mass. 458, 460; Draper v. Mann, 117 Mass. 439, 441.

█ If there is a redemption within the three-year period it is provided by Mass. G.L.(Ter.Ed.) c. 244, sec. 20, that the mortgagee in possession must account for the rents and profits received by him and shall "be allowed for all amounts expended in reasonable repairs and improvements, for all lawful taxes and assessments paid and for all other necessary expenses in the care and management of the land. A balance of such account, if due from him, shall be deducted from the debt due on the mortgage; if due to him, shall be added to the debt, and paid or tendered as such". Furthermore, where actual foreclosure has taken place, the determination of the deficiency judgment depends upon a similar accounting between mortgagor and mortgagee. Newall v. Wright, 3 Mass. 138, 3 Am.Dec. 98; Amory v. Fairbanks, 3 Mass. 562; City Institution for Savings v. Kelil, 262 Mass. 302, 159 N.E. 731; Beal v. Attleborough Savings Bank, 248 Mass. 342, 142 N.E. 789.

█ There is nothing in the Massachusetts law, therefore, which compels the conclusion that a mortgagee's entry to foreclose in itself evidences a complete or partial worthlessness of the mortgage debt. It was still possible, under the provisions of Massachusetts law, for the mortgagor in the present case to redeem within a period of three years after the plaintiff entered in 1930. Whether loss to the mortgagee became inevitable in that year really must depend upon whether it could be said, upon the evidence presented, that in 1930 the chances of a future redemption by the mortgagor or recovery of a collectible deficiency judgment against him could fairly be dismissed as negligible. The burden of showing this was upon the taxpayer. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623; Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991.

█ The only evidence contained in the record on this issue consists of the resolu-

---

[1] The plaintiff does not claim to be entitled to a bad debt deduction under Sec. 23 (j).

tion of the directors of the Western Mass. Realty Co., the mortgagor, that they were turning over the property because they were unable to meet the mortgage thereon; the record also contains certificates of condition filed by the mortgagor corporation with the State Commissioner of Corporations and Taxation which show that in 1930, 1931 and 1932, the mortgagor's liabilities exceeded its assets. It cannot be said, however, that the District Court should have held that this evidence alone conclusively eliminated the reasonable possibility of redemption by either the mortgagor or its creditors, or that this evidence alone made it clear in 1930 that the mortgagee had no reasonable expectation of being able to recover a deficiency judgment, collectible in whole or in part, against the mortgagor after the expiration of the three-year redemption period.

The taxpayer urges that the action of the mortgagor's directors constituted an "abandonment" of the property, and cites in support of its contention Rogers v. Commissioner, 9 Cir., 103 F.2d 790. In that case, there was a conceded relinquishment of the mortgaged property to the mortgagee in exchange for cancellation of the mortgage debt. The mortgagor parted with all right, title and interest in the land—in exchange, the mortgagee handed over the mortgage notes to the mortgagor. The court held that this gave rise to a deductible loss to the mortgagor. In the case at bar, there is nothing in the record which evidences any agreement, express or implied, between the mortgagor and the mortgagee, that the mortgagee's entry to foreclose consummated a final, complete transfer of the property from the mortgagor to the mortgagee. Consequently we can find no justification in the record for the plaintiff's theory that the mortgagor "abandoned" the property in favor of the mortgagee, and that the mortgagee reciprocated by abandoning the mortgage debt.

We conclude, therefore, that the court below did not err in holding that the taxpayer was not entitled to any deduction in its 1930 tax liability on account of the foreclosure entry upon the Western Massachusetts Realty Company property.

### 1931

The plaintiff seeks to recover a refund of 1931 taxes in the sum of $14,583.69. The controversy arises over the action of the Commissioner in refusing to allow as deductions (1) losses claimed to result from foreclosure, by entry, of two mortgages; (2) losses claimed to result from foreclosure by sale of two mortgages; (3) expenses incurred in connection with all of said mortgages; and (4) certain so called bad debts.

First: On June 1, 1931, the plaintiff held two real estate mortgages securing notes aggregating $120,000. In March and May, 1931, plaintiff entered upon the mortgaged premises for the purpose of foreclosure. There was no sale under the power of sale in the mortgages. The fair market value at the time of the entries was $102,500. Plaintiff contends that it is entitled to a deduction as a loss allowable under 23(f) of the Revenue Act of 1928. The plaintiff is not entitled to this deduction. What we have said above respecting the 1930 tax fully disposes of this issue. The record is even more barren on the question of reasonable possibility of redemption by the mortgagors or of collecting deficiencies from them.

Second: On January 1, 1931, plaintiff had two other mortgages on real estate, aggregating $55,500, which mortgages were foreclosed in August, 1931, by the exercise of the power of sale contained therein. Plaintiff bid in the properties for $56,000. The fair market values of these properties at the time of sale was $49,200. A loss measured by the difference between the fair market values and the face of the mortgage indebtedness is claimed as a deduction. The plaintiff relies not only upon the statute but also upon Article 193 of Regulations 74, which contains the following provision:

"Uncollectible deficiency upon sale of mortgaged or pledged property.—Where mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. In addition, where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of those obligations of the debtor which are ap-

plied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

Accrued interest may be included as part of the deduction only when it has previously been returned as income."

Much to the same effect is the income tax ruling No. 3121 (1937—2 Cum.Bull. 138).

In the absence of any regulation, it would be doubtful whether plaintiff's claim for a deduction respecting these two mortgages could be upheld, in view of Helvering v. Midland Mutual Life Insurance Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436. The District Judge, notwithstanding this regulation, upheld the Commissioner in refusing to allow the deduction. It is obvious that he was of the opinion that the Commissioner had exceeded his authority in promulgating the provisions for ascertaining the loss or gain in the case of purchase by mortgagee at foreclosure sale. The question presented is whether the District Court erred in thus disregarding the regulation.

Article 193 of Regulations 74, promulgated under the Revenue Act of 1928, is the same as Article 153 of Regulations 69, issued under the Revenue Act of 1926, which has continued to be found in the general Regulations issued under the successive Revenue Acts. See Art. 193, Reg. 77, under the Revenue Act of 1932; Art. 23 (k)-(3), Reg. 86 (Revenue Act of 1934); Art. 23 (k)-(3), Reg. 94 (1936); Art. 23 (k)-(3), Reg. 101 (1938); Sec. 19. 23 (k)-3, Reg. 103 (1939), under 26 U.S.C.A.Int. Rev.Code, § 23 (k).

There has been, since 1926, no substantial change in the statutory provisions relative to the right of a corporation to make deductions for losses sustained by it.

 It is already familiar doctrine that a regulation interpreting a provision of the revenue laws is deemed, upon subsequent reenactment of the provision without substantial alteration, to have received legislative ratification and thereby to have been given the force and effect of law. Helvering v. R. J. Reynolds Co., 306 U.S. 110, 115, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Massachusetts Mutual Life Insurance Co. v. United States, 1933, 288 U. S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739; Lang v. Commissioner, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L. Ed. 893; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 293, 294, 55 S.Ct. 158, 79 L.Ed. 367.

The provisions of section 23 are broad in scope and the interpretive regulations of Article 193 are reasonably adapted to the administration of the Act. It is difficult to see wherein they conflict with any statutory provision. Indeed, almost all of the various requirements with respect to these deductions—e. g., that losses must be established by bona fide sales, that they must be evidenced by "closed and completed" transactions, that charge-offs can, under certain circumstances, be made in the year following ascertainment of worthlessness, etc.—are refinements which have been introduced by the Commissioner and the courts into the statute without having any explicit basis therein.

The foreclosure sale, involving an exchange of a debt-asset for a property-asset could well be taken as the identifiable event (United States v. S. S. White Dental Mfg. Co., supra, 274 U.S. at page 401, 47 S.Ct. 598, 71 L.Ed. 1120) necessary to the ascertainment of gain or loss. If the Commissioner, in the exercise of his power to issue regulations, saw fit to adopt the foreclosure sale as such an "identifiable event," it does not follow that he exceeded his authority.

It is true, of course, that ordinarily no gain or loss is realized upon the "purchase" of property. See 3 Paul & Mertens, Law of Federal Income Taxation (1934) sec. 26.37. And it was the District Court's theory that the "essence of a transaction whereby a mortgagee buys mortgaged property for the amount of the mortgage debt or for a larger sum is the same as in the case of any purchaser. The loss contemplated by the statute occurs, not when he buys it, but when he sells." D.C., 22 F. Supp. 346, 350. But when a mortgagee buys in the property, he "pays" for it with

so much of the mortgage obligation as is applied to the bid price; in substance, there is a cancellation or offset of cross-claims between mortgagor and mortgagee. This might conceivably be classified as a transaction of "exchange" or as a transaction of "purchase"; we see nothing intrinsic in its nature which would compel one classification rather than the other. Indeed, the distinction between a "purchase" and an "exchange" is largely verbal. There would certainly be nothing outrageous in speaking of "exchange" of money for goods; this is what in effect actually happens in connection with every so-called "purchase". Nevertheless, we ordinarily use the word "exchange" to describe a transaction where one piece of property, usually something other than money or its equivalent, is given in return for another such piece of property. But a rational distinction can be made between a "purchase" of property with money (as to which transaction it is assumed that no gain or loss is realized) and the acquisition of property in exchange for the extinguishment, in whole or in part, of the mortgage obligation. We see nothing in the statute which forbids the taking of such a distinction, and we conclude that the Commissioner's treatment of the mortgage obligation as a capital asset, as to which gain or loss is realizable, cannot be held a plain misinterpretation of a clear, unambiguous provision of the statute.

We conclude, therefore, that the regulation was valid and that the plaintiff is entitled to have it applied in the determination of its tax liability.

We do not find in Helvering v. Midland Mutual Life Ins. Co., supra, anything requiring a different conclusion. The only question before the court in that case was whether an insurance company should include in its gross income, as interest, the amount of interest included in the bid price for real estate acquired by it at foreclosure sale, the fair market value being less than the bid price. The court held that the interest was taxable income.

We do not see how this holding sheds any light on the question of authority of the Commissioner to provide by regulation for the ascertainment of gain or loss in those cases within the reach of Regulation 193. In the case of Helvering v. Midland Mutual Life Ins. Co., supra, the court was not dealing with the validity or applicability of any regulation similar to Regulation 193.

The court strongly emphasized that the taxable nature of the transaction depended not upon the fact that mortgagee took over land worth less than the mortgage debt, but rather upon the circumstance that the price bid by the mortgagee was entirely within its control and that it should accordingly be bound thereby.

Mr. Justice Brandeis, in his opinion in the Midland case, points out that the administration of the income tax law would be severely burdened if it were necessary to inquire into the fair market value when a mortgagee bids in property for a sum including interest.

Although the language of the court is very broad, we cannot believe that it was intended to preclude examination into the fair market value of property under all circumstances, especially in a case where the agency required to engage in the process of valuation, viz., the Treasury Department, has itself been responsible for the rule making valuation necessary. We do not see why an interpretive regulation requiring the Treasury Department to engage in valuation should not be treated just like any other regulation interpreting a statutory provision. Upon reenactment of the statute without change, such a regulation should be given the force and effect of law. Surely if the Supreme Court had been faced, in the Midland Mutual case, with a statutory provision making determination of the fair market value necessary, it would not have disregarded such a mandate. Similarly, we are faced here with a regulation which has become imbedded in the statute. We may not disregard it simply because we may feel that, in its absence, we would not be inclined, because of the severe administrative burden which would be thereby imposed on the Treasury, to interpret the statute in the same way.

Another cogent reason for upholding Article 193 was well stated in a recent article (Paul, Federal Income Tax Problems of Mortgagors and Mortgagees. 48 Yale L.J. 1315, at 1329—30):

" * * * the confusion which may arise if the Regulation (Article 193) be finally upset as being in contravention of the Midland Mutual Life case is easily imagined. If a mortgagee resells property bid in upon a foreclosure for more than the foreclosure bid price, he may be taxed upon the difference between his reselling price and the bid price, although he may already have

been taxed upon the excess of the fair market value of the property at the time of the foreclosure over the bid price. On the other hand, if he resells the property for less than the foreclosure bid price, the mortgagee may be entitled to a loss, although he has already been allowed a loss equal to the excess of the amount of his bid over the fair market value of the property at the time of the foreclosure."

We conclude, therefore, that the District Court erred in failing to hold Article 193 of Regulations 74 applicable to the present case. The plaintiff was entitled to a loss deduction equal to the difference between the basis of the mortgage obligations applied to the purchase price of the mortgaged properties and the fair market value of these properties at the time of the foreclosure sale. The case must therefore be remanded to the District Court for further proceedings consistent with our conclusion as to the applicability of Article 193 of Regulations 74.

■ Third: The taxpayer claimed deductions for various expenses, viz.: real estate taxes, insurance, legal fees, and repairs, incurred in 1931 in connection with the Rubin and Bloomberg properties, as to which entry to foreclose was made in 1931; in connection with the Normand property, as to which both entry and sale were made in 1931, and in connection with the Donaghue property, as to which entry was made in 1929 and sale in 1931. The District Court held that the plaintiff had not sustained the burden of showing that any of these expenses accrued after the actual foreclosures of any of these properties; and there is nothing in the record which would justify our holding this to be error. We must assume, therefore, that these expenses accrued either while the mortgagee was in possession of the properties after entry and before sale, or in connection with the foreclosure sales.

The District Court disallowed these deductions on the ground that they were not "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" (Sec. 23(a), but were instead nondeductible capital expenditures.

Although in many cases it is difficult to draw a precise line between deductible business expenses and nondeductible capital expenditures (see Note (1934) 47 Harv. L.Rev. 669), we agree with the District Court that these items should be treated as capital expenditures, made for the purpose of protecting a capital investment. Compare Michigan Central R. R. Co. v. Commissioner, 28 B.T.A. 437, 444; Williams v. Burnet, 1932, 61 App.D.C. 181, 59 F.2d 357, 358; Hague v. Commissioner, 24 B.T.A. 288, 290; Shaw-Hayden Building Co. v. Commissioner, 18 B.T.A. 949. In these cases expenditures not essentially dissimilar in nature from those involved here were held nondeductible.

As we have already seen, under the provisions of Massachusetts law, the accounting between the mortgagor and the mortgagee at the end of the redemption period takes into consideration both the rents and profits received by the mortgagee while in possession and the amounts expended by him. This includes expenses of the foreclosure sale, including auctioneer's fees and charges for legal services. City Institution for Savings v. Kelil, 262 Mass. 302, 159 N.E. 731.

Since its findings that these expenses were incurred prior to actual foreclosure were not contradicted by the evidence, we conclude that the District Court did not err in holding these expenditures nondeductible.

■ Fourth: There remains for consideration only the taxpayer's claim that it is entitled to a bad debt deduction on account of certain unsecured promissory notes in the amount of $40,908.74. The District Court found "as a fact upon all the evidence" that these notes were not "debts ascertained to be worthless and charged off within the taxable year."

In reply to the District Court's question "Why, when you were including deductions for bad debts in the return for the year 1931 you didn't include these $40,000 of notes?", the plaintiff's treasurer replied, "In all the years I made the returns I never claimed any deductions in my returns unless the items had been actually charged off," and that he "didn't do it because the item of $40,000 hadn't been actually charged off."

The District Court did not err in disallowing this deduction.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.