### FIDELITY & DEPOSIT CO. OF MARYLAND v. MAGRUDER, Collector of Internal Revenue.

### Civil Action No. 1818.

District Court, D. Maryland.

June 23, 1943.

818

Washington Bowie, Jr., and E. B. Mc-Cahan, Jr., both of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., and George J. Laikin, Sp. Asst. to Atty. Gen., for defendant.

COLEMAN, District Judge.

This is a suit to recover income taxes paid for the year 1935 by the plaintiff, the Fidelity & Deposit Company of Maryland, an insurance company incorporated under the laws of Maryland, in the amount of $27,500 and interest.

The material facts, as to which there is no dispute, may be summarized as follows:

In September, 1931, the affairs of the Baltimore Trust Company, one of Baltimore's large banking institutions, were in a precarious condition as a result of the financial depression that was spreading over the entire country. In an effort to obviate the closing of this institution, a guaranty fund of $7,700,400 was raised by a group of local persons and corporations interested in preserving the Trust Company's solvency. To this fund the present plaintiff contributed $200,000. Pursuant to the express agreement made by the Trust Company with all contributors to this fund, the latter were subordinated to the rights

of depositors and other creditors of the Trust Company, but were entitled to reimbursement out of any assets that might remain to the Trust Company after paying depositors and other creditors. Every contribution to the guaranty fund was evidenced by a certificate of indebtedness issued by the Trust Company which carried interest at 2% per annum, which was paid until 1933, when default occurred. In February of that year, the Governor of Maryland declared a bank holiday and the Trust Company closed. Shortly thereafter, the President of the United States declared a nation-wide bank holiday. Subsequently, the Trust Company was permitted to reopen on a restricted basis, whereby depositors were allowed to withdraw not more than 5% of their deposits. However, by July 1933, liquidation of the Trust Company appeared inevitable, a plan of liquidation was evolved and until January 1935, the Trust Company's affairs continued under the control of the Bank Commissioner of Maryland, and then the Deputy Commissioner was appointed receiver for the Trust Company.

This contribution of $200,000 which the plaintiff had made to the Baltimore Trust Company was carried on its, the plaintiff's, books for the year 1931 as an asset, having a par value equal to its cost, i.e. $200,000. For the year 1932 it was also carried on the books as an asset and was given both book and market value equal to the cost, i.e. $200,000. During that year interest in the amount of $4,666.63 was received on this item, pursuant to the certificate of indebtedness which the Trust Company had issued to the plaintiff. However, during the first half of the year 1933, this $200,000 was transferred on plaintiff's books to so-called "Schedule X", which is a record of the Company's "unlisted assets", and is described as "showing all property owned by the Company in which it had any interest on December 31 of the current year and which is not entered on any other schedule and which is not included in the financial statement for the current year." The $200,000 was given a book value of "nothing", and decrease by adjustment in book value during the year was shown as $200,000. The Company's books also showed that during this same year, 1933, the plaintiff company had received interest on this item in the amount of $666.65. Plaintiff reflected this item

in its 1933 tax return as part of its total loss which was indicated in its return as $1,416,160.83. The deduction was not questioned by the Commissioner of Internal Revenue. Entirely apart from the inclusion of this item, plaintiff had no income tax liability for 1933, because of the extent of its other losses, and therefore no tax was paid or assessed.

In the year 1934, the $200,000 was again listed in Schedule X, and its book value was given as $200,000 but its market value as $100. No interest was received on this item in 1934. The plaintiff's income tax return for this year originally indicated a loss and therefore no tax liability, but subsequently, as a result of revision, the plaintiff did pay certain taxes.

Finally, the plaintiff's return for 1935, which was a profitable year, showed net income of $432,875.36, and in this return there was charged off as an "account receivable" this $200,000 item. The Company's books and annual statement for 1935 show that this item was no longer carried at a nominal value in Schedule X, but was completely written off.

The controlling statute is Section 23(k) of the Revenue Act of 1934, Sec. 23(k), 26 U.S.C.A. Internal Revenue Acts, page 673, which reads as follows:

"Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

   \*    \*    \*    \*    \*    \*

"(k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

The applicable Treasury Regulation is the following (Article 23(k)-1, Treasury Regulations No 86):

"Bad Debts. \* \* \*

   \*    \*    \*    \*    \*    \*

"If all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a

statement showing the propriety of any deduction claimed for bad debts.

\* \* \* \* \* \*

"Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received. In determining whether a debt is worthless in whole or in part, the Commissioner will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only.

"Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction. Bankruptcy is generally an indication of the worthlessness of at least a part of an unsecured and unpreferred debt.

\* \* \* \* \* \*

"Federal or State authorities incident to the regulation of banks and certain other corporations may require that debts be charged off in whole or in part. If, in any such case, the basis of the requirement is the worthlessness or partial recoverability of the debt, as the case may be, such charging off will, for income tax purposes, be considered prima facie evidence of worthlessness; but if the charging off is due to market fluctuations, or if no reasonable attempt has been made to determine to what extent recovery may be made, no deduction for income tax purposes of the amount so charged off can be allowed."

■ It will be noted that before a debt may be deducted from gross income as a bad debt, two conditions must be fulfilled, namely, (1) the debt must be ascertained to be worthless, and (2) it must he charged off within the taxable year. The Government contends that the plaintiff both ascertained that its advance to the guaranty fund was a worthless debt and charged it off in 1933, and that having

done so, and having included such deduction in its 1933 income tax return, plaintiff may not, a second time, claim the same deduction in 1935.

On its part, however, the plaintiff company contends that it never, in fact, wrote this item off until 1935, when for the first time its worthlessness was definitely ascertained.

First, let us analyze what the facts disclose with respect to writing off of the debt. As already indicated, Schedule X of the plaintiff's books, to which the item here in issue was transferred in 1933, represented a record of plaintiff's unlisted assets, namely, assets owned by it, or in which it has some interest on December 31st of the current year, and which were not entered on any other schedule or included among its approved assets shown in its financial statement for the current year. It is to be noted that items transferred to this Schedule X were not items necessarily determined to have no value at the time of transfer, but were items which the Company was not permitted to list as approved assets to which its policy holders and stockholders might look as having a definite, fixed value. When such items were sold or definitely ascertained to be worthless, they were taken out of Schedule X and completely charged off the plaintiff's books.

Thus, it appears that for the year 1933 there were six items transferred to Schedule X, in addition to the $200,000 guaranty fund item here in issue, the aggregate of the seven items being $306,754.50. However, the figure shown in plaintiff's 1933 income tax return purporting to reflect its loss on investments during that year was $636,531.65, while plaintiff contends that this item should have been only $329,777.15, that is, only the amount of its losses as to which there was and could have been no dispute, and not such amount plus the amount of these seven items. In other words, plaintiff contends that while it made no mistake in the entries upon its books and in its annual published statement respecting these items, there, nevertheless, was error in the preparation of its income tax return for the year 1933, in that, in transferring to this return figures purporting to reflect its actual loss in operations during the year 1933, the six items, and also the one here in issue, all of which in that year had been transferred to Schedule X, were included.

The six items represented bonds and stocks, and with respect to four of them, the loss was not ascertained until they were sold subsequently to 1933, although these four items were included in the figure of losses just referred to in the plaintiff's income tax return for 1933. That is to say, three of these four items the plaintiff sold, some in 1937 and the rest in 1940, and in its income tax returns for those years it charged off its losses on account of these sales. In 1941, the plaintiff deducted, as worthless, the fourth of these items in its income tax return for that year. The Internal Revenue Department audited plaintiff's returns for the years 1937, 1940 and 1941 in which these items just referred to were allowed, which would indicate that the Department recognized and accepted, at least inferentially, the existence of error in the computation of plaintiff's losses as reflected in its income tax return for 1933, in so far as it affected these particular items. From this the plaintiff argues that the Department's position with respect to the $200,000 item here in issue is inconsistent, namely, that it cannot accurately say that this item is to be treated as having actually been charged off, or intended to be charged off, in 1933, when the other items just referred to, having a similar status, were not, in fact, charged off until subsequent years when the losses with respect to each of them were definitely ascertained.

■ We feel that there is much merit in this contention of the plaintiff. However, we do not believe that it is necessary to rest our decision upon this point because, even if we assume that the plaintiff's position in this respect is not entirely free from doubt, we are satisfied that on the question of when the debt was ascertained to be worthless, plaintiff's contention that, within the statutory meaning of deductible bad debts, it was not so ascertained until the year 1935, is supported by the weight of the credible evidence.

We base our conclusion upon the following facts. Following the bank holiday, the Baltimore Trust Company operated on a restricted basis, but there was nothing of record which had determined that institution's insolvency, although it is true that the feeling was prevalent among banking circles, and with the public generally, that at that time the Trust Company was insolvent. In 1933, its plan of reorgan-

ization was published. However, this plan was not predicated upon insolvency, but upon conditions which prevented the Trust Company from weathering the period of abnormal withdrawals of deposits and destruction of values during the winter of 1933. At that time there was no determination or adjudication of insolvency. It is true that in July, 1933, the Banking Commissioner's appraisal of the guaranty fund certificates showed them to be worthless, but this appraisal had not been made a public record. Acceptance by the Trust Company's depositors of its plan of reorganization presented the legal question of whether or not such acceptance would be a waiver of the rights of its depositors against its stockholders under their statutory liability, and whether or not the position of the holders—such as the plaintiff—of the Trust Company's guaranty fund certificates, would thereby be placed in a more advantageous position. The plan of reorganization of the Trust Company provided that a liquidating company be set up to take over its assets. When this was done on December 31, 1934, the Trust Company's balance sheet still showed assets in excess of liabilities to the extent of more than $8,000,000. It was not until January, 1935, that a receiver was appointed, and it was not until June 18, 1935, that the Court of Appeals of Maryland decided (Robinson v. Hospelhorn, 169 Md. 117, 179 A. 515, 184 A. 903, 103 A.L.R. 740) that the Trust Company's depositors had not waived their rights with respect to its stockholders' liability, thereby for the first time fully settling the question as to the extent of the priority of depositors over holders of the guaranty fund certificates. Finally, it was not until November 13, 1935, that the Trust Company was declared to be insolvent by the Circuit Court No. 2 of Baltimore City.

Plaintiff contends, and we believe correctly, that, in view of the sequence of events just analyzed, it is reasonable to claim that it had not, in fact, ascertained the worthlessness of the item here in issue prior to the year 1935, and that, therefore, the deduction of this item in its income tax return for that year as a bad debt was entirely proper.

■ It is true that a deduction from gross income by a taxpayer on his return raises a presumption of ascertainment, see Ludlow Valve Mfg. Co. v. Durcy, 2 Cir., 62 F.2d 508, and that the true test

lies in the answer to the question: At what time did the taxpayer, acting in good faith, actually ascertain the debt to be worthless? See Jones v. Commissioner of Internal Revenue, 7 Cir., 38 F.2d 550; Moore v. Commissioner of Internal Revenue, 2 Cir., 101 F.2d 704. It is equally true that the taxpayer does not have the right to elect the year within which he will deduct the worthless debt. It must be deducted, if at all, in the year of its ascertainment. Avery v. Commissioner of Internal Revenue, 5 Cir., 22 F. 2d 6, 55 A.L.R. 1277. However, no question of limitations is here involved, as was the case, for example, in Helvering v. Lerner Stores Co., 314 U.S. 463, 62 S. Ct. 341, 86 L.Ed. 343. Nor is it accurate to say that to permit the present plaintiff to have the deduction in 1935 would be to permit a double deduction for the same item, and, therefore, in conflict with well settled rules. See Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; Comar Oil Co. v. Helvering, 8 Cir., 107 F.2d 709. The deduction of the item here in issue in plaintiff's 1933 return did not result in a reduction of plaintiff's tax in that year, because, omitting this deduction, no tax was due.

For our conclusion a very strong analogy is to be found in the recent amendment of October 21, 1942, § 116(a), to Section 22(b) of the Revenue Act of 1936, and later Acts, 26 U.S.C.A. Int.Rev. Code, § 22(b) (12), whereby the right to require the inclusion, as part of gross income, of amounts collected on bad debts which had previously been charged off as worthless, was conditioned upon such charge off having actually resulted in a tax benefit to the taxpayer, thus annulling the effect of such decisions as Helvering v. State-Planters Bank & Trust Co., 130 F.2d 44, a decision of the Circuit Court of Appeals for this Circuit.

It is, of course, true that in the present case, we are not faced with precisely the same situation to which the amendment just referred to applies, but nearly so, and the amendment does indicate an intention on the part of Congress to liberalize the law relative to situations of this kind. Further, it is to be noted that this amendment is retroactive in effect as if a part of any prior revenue Act at the date of its enactment.

In the quite recent case of Helvering v. Smith, 132 F.2d 965, the Circuit Court of Appeals for the Fourth Circuit had occasion to consider the same phrase, namely, "Debts ascertained to be worthless" in the Revenue Act of 1936, § 23(k), 26 U.S.C.A. Int.Rev.Acts, page 828. It is true that the facts in that case are different from those with which we are here concerned, and the Court finding that the case had been tried by the Board of Tax Appeals on a wrong theory, namely, on the assumption of the existence of a fact not supported by the evidence, remanded the case for further proceedings. But the Court said (page 967 of 132 F.2d): "While it may be said, strictly speaking, that a deduction for a bad debt is allowable under the statute when its worthlessness is 'ascertained', while a deduction for a loss is allowable only when it is actually 'sustained', a loss of either sort must be shown or proved by some 'identifiable event', or by attending circumstances which support an ascertainment of worthlessness." After quoting the applicable Regulation (No. 94, Art. 23(k)–1) which is the same as Regulation 86, applicable to the present case, the Court continued (page 968 of 132 F. 2d): "In harmony with Article 23(k) of these Regulations the Board of Tax Appeals has uniformly held that depositors of insolvent banks are not justified in taking a deduction for any part of their deposits as bad debts during the process of liquidation until it is reasonably certain that a loss has been sustained and the amount of it has been ascertained. Eastern New Jersey Power Co. v. Commissioner, 37 B.T.A. 1037; Van Smith Bldg. Material Co. v. Commissioner, 16 B.T.A. 875; Estate of C. T. Grant v. Commissioner, 36 B.T.A. 1233. And the courts have held that neither the whole nor a part of a debt may be charged off as worthless until the taxpayer is able to demonstrate with a reasonable degree of certainty the amount that is uncollectible. Johnson, Drake & Piper, Inc., v. Helvering, 8 Cir., 69 F.2d 151; Bingham v. Commissioner, 2 Cir., 105 F.2d 971; Hadley Falls Trust Co. v. United States, 1 Cir., 110 F.2d 887. Likewise, the courts have uniformly held that losses by individuals may not be deducted unless they grow out of closed and completed transactions in which all reasonable possibility of gain has been exhausted. Mahler v. Commissioner, 2 Cir., 119 F.2d 869; Deeds v. Commissioner, 6 Cir., 47 F.2d 695; Burdan v. Commissioner, 3 Cir.,.

106 F.2d 207; Jones v. Commissioner, 9 Cir., 103 F.2d 681."

■ We believe there is an element of unfairness to the taxpayer through adherence to the rigidity of interpretation for which the Government here contends. At the time the plaintiff made its contribution to a joint effort "to save" the Baltimore Trust Company, values in everything were literally crashing all over the country. The period of resuscitation has been long and tedious. Is it not entirely reasonable under these circumstances, for the plaintiff to say that anything short of a judicial determination of the assets and liabilities of its debtor was no determination at all? We think so. In the cases upon which the Government relies, judicial determination of the solvency or insolvency of the taxpayer's debtor was not, as here, a sine qua non for the ascertainment of the amounts, if any, finally owing to the taxpayer, and to all the other creditors. There has been no "double deduction" in the legal sense, but merely a bookkeeping one, resulting from what presumably would and should have been treated as a correctible error in an earlier return, had it not also escaped the attention of the auditors or examiners of the Internal Revenue Department.

Finally, be it noted that presumably under the Act of May 28, 1938, § 820, 26 U.S.C.A. Int.Rev.Code, § 3801, there are, as a practical matter, virtually no limitations of time that run against the Government when it sees fit to reopen items on income returns of a taxpayer for past years believed by the Government to have been erroneously entered or computed, as reflected by items on a later return. See Helvering v. Smith, supra. Should there not be at least some modicum of a corresponding right left to the taxpayer to explain and to correct if, as here, such would not result in double benefit to the taxpayer, and if the taxpayer has acted in good faith, and under conditions beyond the taxpayer's control? We think so. In Mayer Tank Mfg. Co. v. Commissioner of Internal Revenue, 126 F.2d 588, it was held by the Circuit Court of Appeals for the Second Circuit, that the fact that proceedings for a reorganization of a debtor company under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, had not been dismissed, and that dismissal had not been suggested by the taxpayer or any other creditor, raised a strong presumption that reorganization was by no means hopeless, in connection with a determination of whether a debt owed to the taxpayer could be deducted as a bad debt in computing net income. The principle announced in this case is not without definite analogy to the principle which we feel must control here.

For the reasons herein given, judgment must be for the plaintiff for the claimed amount, plus interest as allowable under the Internal Revenue statutes.